IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DOUGLAS N. TUCKER, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-113-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Douglas N. Tucker (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 17, 1957 and was 52 years old at the time of the ALJ's decision. Claimant completed his high school education and received training in small engines and machine shop in school. Claimant worked in the past as a retail sales

associate, a delivery truck driver, a flat bed truck driver, and a concrete construction worker. Claimant alleges an inability to work beginning June 11, 2006 due to limitations resulting from problems with his right knee.

### Procedural History

On November 29, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 19, 2009, an administrative hearing was held before ALJ Edward Thompson in Oklahoma City, Oklahoma. On November 13, 2009, the ALJ issued an unfavorable decision. On October 21, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work as a retail sales associate.

### Errors Alleged for Review

4

Claimant asserts the ALJ committed error in (1) not properly evaluating the opinion of Dr. Dukes; (2) improperly rejecting the opinion of Dr. Hastings; and (3) failing to perform a proper step four analysis.

**Evaluation of the Opinion of Dr. Dukes**

Claimant's right knee problems began with a work related injury on June 11, 2006. Claimant sought treatment in the emergency room two days later. The attending physician found Claimant had tenderness in his right knee, very mild swelling, and an antalgic gait. (Tr. 278). Claimant was diagnosed with a contusion and sprain of the right knee and given a knee immobilizer and crutches. The doctor noted "lots of old osteophytes possible." (Tr. 275). Claimant was prescribed ibuprofen for pain and told to apply ice and elevate. Claimant was restricted in work with no climbing and limited bending, stooping, kneeling with the right knee. (Tr. 277).

On August 11, 2006, Claimant was attended by Dr. Jack Howard. Claimant complained of increased pain in the right knee with a continuing average pain rated 3-4 out of 10. Dr. Howard recommended continued physical therapy. He found Claimant had progressed well during therapy and had increased range of motion and decreased edema while noting Claimant's pain. (Tr. 300).

Claimant continued treatment with Dr. Howard through October of 2006. Dr. Howard changed and increased Claimant's exercise regimen. (Tr. 291-298).

On November 8, 2006, Claimant saw Dr. Kevin M. Dukes concerning his continuing right knee pain. Dr. Dukes found Claimant to have good range of motion, minimal swelling but marked pain over the medial joint line. Dr. Dukes found no instability or obvious crepitation. A review of Claimant's MRI revealed an abnormal medial meniscus. Dr. Dukes suspicioned a tear. (Tr. 355).

On November 29, 2006, Dr. Dukes noted an additional MRI revealed degenerative thinning of the trochlear groove and some changes of the articular surface of the patella. Dr. Dukes surmised this represented an aggravation of some preexisting changes. Dr. Dukes recommended intraarticular injections in attempt to give Claimant some relief. (Tr. 350). Claimant was restricted to no lifting over 25 pounds, no kneeling, no squatting, and no climbing. (Tr. 351).

On January 15, 2007, Claimant again saw Dr. Dukes. Claimant appeared to be doing better since the injection and had returned to light work. He still reported some problems with weakness, especially with climbing stairs. (Tr. 348).

On April 11, 2007, Claimant was evaluated by Dr. Richard A.

Hastings, II. Claimant reported progressively increasing severe pain, weight bearing pain and swelling in his knee after returning to work. Dr. Hastings noted crepitation was positive on the right with visual swelling and effusion over the knee. A palpable nodular area over the posterior knee was noted with pain over the posterior area of the knee. (Tr. 333-34). Range of motion testing revealed flexion to 100 degrees and extension lag of -5 degrees. Claimant had weakness of the right quadriceps and hamstring muscles to strength testing analysis. Claimant had an antalgic gait to the right on a flat surface. Dr. Hastings opined that Claimant had not reached medical maximum improvement and was in need of further evaluation, testing, and treatment. (Tr. 335-36).

On March 5, 2008, Claimant was again seen by Dr. Dukes. Claimant reported that he had re-injured his knee on April 8, 2007 and complained of giving way, difficulty with stairs and swelling. (Tr. 371). Claimant underwent an additional MRI and on March 19, 2008, Dr. Hastings found Claimant's pain was consistent with patellar tendinitis. He felt he could rule out a meniscal tear. (Tr. 370).

On April 9, 2008, Dr. Dukes examined Claimant for continuing knee pain. He found a considerable amount of signal abnormality just above the tibial tubercle. Claimant had minimal, if any, intraarticular swelling, no obvious crepitation, but experienced

7

pain in the anterior portion of the knee. (Tr. 369). Dr. Dukes completed a form dated April 9, 2008 which permitted Claimant to return to work with restrictions of no kneeling, squatting, or climbing. He also restricted Claimant to a "[s]it-down job only."

On April 30, 2008, Claimant was attended by Dr. Hastings. He found Claimant had reached maximum medical improvement but still tested flexion at 87 degrees and extension lag of -10 degrees. Moderate crepitation was noted. Claimant was positive for patellofemoral grind. Anterior drawer testing was negative. Claimant continued to experience weakness of the right quadriceps and hamstring muscles. (Tr. 385-86). Dr. Hastings concluded Claimant suffered from a 40% permanent partial impairment to the right knee as a result of a work injury. (Tr. 387). Dr. Hastings recommended that Claimant continue with medication and treatment from his physicians. He also stated Claimant "should undergo a course of vocational rehabilitation in conjunction with a full functional capacity evaluation . . . in order to learn a more sedentary type of employment." He also found that any vocational rehabilitation "must be consistent and under the direction of his permanent restrictions as imposed by his treating orthopedic surgeon, Dr. Dukes." (Tr. 388).

In his decision, the ALJ determined Claimant suffered from the severe impairment of patellar tendinitis, right knee. (Tr. 62).

He concluded Claimant retained the RFC to lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand and/or walk (with normal breaks) about 6 hours in an 8 hour workday, sit (with normal breaks) about 6 hours in an 8 hour workday, push and/or pull (including operation of hand and/or foot controls) up to the same weigh for lifting and carrying, climb ramps, stairs, ladders, ropes, or scaffolds on an occasional basis, stoop or crouch on an occasional basis, and balance on a frequent basis. The ALJ restricted Claimant to no kneeling or crawling. (Tr. 64). He determined Claimant could perform his past relevant work as a retail sales associate. (Tr. 66).

With regard to the opinions of Dr. Dukes, the ALJ noted Dr. Dukes' examinations and test results to the extent they supported his findings of non-disability. He failed, however, to set forth Dr. Dukes' limitations upon his ability to work. (Tr. 65-66).

Without challenge, Dr. Dukes is one of Claimant's treating physicians. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

From a review of the ALJ's decision, this Court cannot determine whether the ALJ considered Dr. Dukes' opinion on Claimant's work limitations or if he afforded any of this treating physician's opinions controlling weight since little is mentioned in the decision regarding opinion evidence from Dr. Dukes. On remand, the ALJ shall re-evaluate Dr. Dukes' opinions and not just recite his clinical findings.

**Evaluation of the Opinions of Dr. Hastings**

The ALJ cited to Dr. Hastings' medical evaluation from April of 2007, recognizing his findings that Claimant was not at maximum medical improvement and was "temporarily totally disabled." (Tr. 63). The ALJ then stated he considered Dr. Hastings' opinion but concluded that whether an individual is disabled is an issue reserved for Defendant. The ALJ further concluded that Dr. Hastings' opinions were inconsistent with other doctors and was afforded "very little weight" because they were not supported by substantial evidence. (Tr. 66).

Despite the ALJ's finding, the evidence in the record

11

indicates that Dr. Hastings' opinions were wholly consistent with the opinions of Dr. Dukes. Indeed, Dr. Hastings specifically found any vocational rehabilitation must be consistent with Dr. Dukes' restrictions. The ALJ's additional reason for rejection of Dr. Hastings' opinion - that it was not supported by evidence in the record - is also erroneous. Dr. Dukes substantiated through his examinations the majority of Dr. Hastings' conclusions. On remand, the ALJ shall reconsider his assessment of Dr. Hastings' opinions in light of the evidence in the record from Dr. Dukes.

### Step Four Analysis

Claimant contends the ALJ's step four analysis was flawed. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). To the extent the ALJ failed to afford the appropriate weight to the medical opinion evidence of Dr. Hastings and Dr. Dukes, the ALJ's findings on Claimant's RFC must be reevaluated.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in

this case inquired of the vocational expert as to the exertional level of Claimant's past relevant work as a retail sales associate at Home Depot. The vocational expert testified that the work was light without further explanation. (Tr. 120). Claimant had previously testified he was required to lift up to 100 pounds and frequently lift 50 pounds. Additionally, Claimant was required to stand or walk for his entire 8 hour workday. (Tr. 240-41). As a result, the ALJ failed to adequately ascertain and consider the demands of Claimant's past relevant work at the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. Since the ALJ did not accurately ascertain or consider the demands of Claimant's past relevant work, he did not properly consider whether Claimant could meet those demands given his limitations. On remand, the ALJ shall reconsider and reevaluate his step four analysis.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the

Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 2nd day of July, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE